* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Griffin with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff suffered a comepensable injury by accident on January 22, 2004 to his right ankle. Defendants accepted this claim as comepensable and plaintiff received temporary total disability benefits from March 1, 2004 through March 28, 2004.
2. On January 22, 2004 the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On January 22, 2004 the employer-employee relationship existed between plaintiff and defendant.
4. On January 22, 2004 defendant employed three (3) or more employees.
5. On January 22, 2004, the carrier of workers' compensation insurance in North Carolina for defendant was National Fire Insurance Company, with CNA Claims Plus serving as the Third-Party Administrator.
6. That plaintiff's average weekly wage is determined pursuant to a Form 22 Wage Statement.
7. The following were marked and received into evidence as:
 a. Stipulated Exhibit Number 1, Pre-Trial Agreement
 b. Stipulated Exhibit Number 2, Industrial Commission Forms
 c. Stipulated Exhibit Number 3, Medical Records
 d. Defendants' Exhibit Number 1, Employee Handbook, Safety Policy and Procedure Manual
 e. Defendants' Exhibit Number 2, Plaintiff-Employee's 2004 Weekly Time Sheets
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 63 years old with a tenth-grade education. For approximately 20 years, plaintiff was employed as a truck driver with defendant. Plaintiff's primary duties included driving dump trucks to various locations upon the direction of defendant. The dump trucks operated by plaintiff were automatic transmission and were not operated by an on-board computer. Plaintiff would assist with other duties on the job site.
2. On January 22, 2004, plaintiff sustained a compensable injury to his right ankle when he fell after stepping into a hole. On January 23, 2004, plaintiff sought medical treatment at Northwest Family Physicians. He was advised to remain out of work until January 25, 2004.
3. On January 29, 2004, Dr. Pressly Gilbert with Charlotte Orthopaedic Specialist evaluated plaintiff's right ankle injury. Dr. Gilbert diagnosed plaintiff with a deltoid sprain of the right ankle. Plaintiff returned to Dr. Gilbert on March 1, 2004 to discuss the results of the MRI scan. After reviewing the MRI scan, Dr. Gilbert could not explain plaintiff's tenderness and pain. Dr. Gilbert wrote plaintiff out of work until March 8, 2004. During this period, Dr. Gilbert had the MRI films reviewed for a second opinion by a musculoskeletal radiologist.
4. On March 8, 2004, Dr. Gilbert injected plaintiff's ankle with medication and wrote him out of work for another week. On March 16, 2004, plaintiff reported that his right ankle pain improved significantly as long as he wore the boot prescribed by Dr. Gilbert. Whenever he did not wear the boot, plaintiff reported significant discomfort in his ankle. Dr. Gilbert prescribed physical therapy and released plaintiff to return to work on March 22, 2004. Dr. Gilbert advised plaintiff to wear his right ankle brace/boot at work.
5. On April 8, 2004, plaintiff reported that he still experienced ankle pain when he did not wear the boot. Dr. Gilbert noted that plaintiff made no progress in physical therapy. At this time, Dr. Gilbert found that plaintiff had reached maximum medical improvement and assigned him a five percent permanent partial disability rating. Dr. Gilbert released plaintiff to return to work without restrictions and provided him with a new walker boot. Also, Dr. Gilbert noted it was acceptable for plaintiff to drive a motor vehicle without wearing the boot.
6. During his course of medical treatment, plaintiff returned to work for defendant initially in a light-duty position. Plaintiff received temporary total disability benefits from March 1, 2004 through March 28, 2004. After this period, plaintiff returned to his regular duties as a truck driver with defendant. Plaintiff was able to operate the truck while wearing the boot prescribed by Dr. Gilbert.
7. Prior to his injury on January 22, 2004, plaintiff advised representatives of defendant of his intention to retire on his 62nd birthday on June 16, 2004. After returning to his regular full-duty position as a truck driver with defendant, plaintiff voluntarily left his employment. Plaintiff did not report to defendants that he was unable to perform his job duties because of his ankle injury. It was defendants understanding that plaintiff had retired as planned. Hazel McSwain Sanders, President of Sanders Utility Construction, testified that a truck driver position was available at the time plaintiff retired in June 2004.
8. On October 26, 2004, plaintiff returned to Dr. Gilbert for further evaluation of his right ankle. Dr. Gilbert noted that there was essentially no change in plaintiff's symptoms since his last evaluation in April 2004. Based on the MRI scan and the nature of his injury, Dr. Gilbert was unable to provide any further medical treatment. Dr. Gilbert referred plaintiff to Dr. James Sebold for a second opinion.
9. On October 28, 2004, Dr. Sebold evaluated plaintiff for a second opinion on his right ankle condition. After reviewing plaintiff's medical treatment and diagnostic testing, Dr. Sebold concurred with Dr. Gilbert's assessment of deltoid sprain of the right ankle and the five percent PPD rating based on plaintiff's complaints of pain. Dr. Sebold noted there would be no permanent work restrictions, "but again he is retired."
10. On December 23, 2004, plaintiff returned to Dr. Sebold with continued complaints of pain. Dr. Sebold advised that a diagnostic ankle arthroscopy was the only other treatment option available to plaintiff. Again, Dr. Sebold released plaintiff to return to work without restrictions and to follow-up on an as-needed basis.
11. On January 24, 2005, plaintiff underwent right ankle arthroscopy with extensive debridement. Dr. Sebold noted some synovitis, but no significant cartilage damage. Dr. Sebold released plaintiff to return to full-duty unrestricted work on February 7, 2005. Dr. Sebold also provided plaintiff with a handicapped sticker for 12 months. There was no evidence presented that plaintiff's possession of a handicapped sticker prevented him from performing his work as a truck driver.
12. As of the date of the hearing before the Deputy Commissioner, plaintiff continued to wear the boot on his right ankle. Plaintiff also wears his regular shoes with a splint on his right ankle. Freddie Young, Vice President and Project Manager of Sanders Utility Construction testified that both the boot and splint worn by plaintiff were acceptable footwear on the job sites.
13. Since he voluntarily left his employment with defendant, plaintiff has earned some income from the sale of firewood by his son.
14. Plaintiff was released to return to full-duty unrestricted work by all of his treating physicians. Plaintiff returned to work in his pre-injury position as a truck driver and then voluntarily retired from the position as previously planned. Plaintiff has failed to prove that he is currently disabled within the meaning of the North Carolina Workers' Compensation Act.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of establishing continuing disability. Plaintiff has failed to prove by the greater weight of the evidence that he is currently disabled within the meaning of the North Carolina Workers' Compensation Act. Sims v.Charmes/Arbys Roast Beef, 142 N.C. App. 154, 159-160,542 S.E.2d 277, 281 (2001); Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
2. Plaintiff is not entitled to any further temporary total disability compensation. N.C. Gen. Stat. § 97-29.
3. As a result of his comepensable injury by accident on January 22, 2004, plaintiff has retained a five percent permanent partial disability rating to his right foot, for which he is entitled to compensation at the rate of $486.06, for a period of 7.2 weeks or in one payment of $3,499.63. N.C. Gen. Stat. § 97-31
(14).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for additional temporary total disability benefits is DENIED.
2. For the five percent permanent partial disability rating to the right foot, defendants shall pay plaintiff $3,499.63. Said amount shall be paid to plaintiff in a lump sum, subject to the attorney's fees approved herein.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff is approved and shall be deducted and paid directly to plaintiff's Counsel.
4. Each side shall bear its own costs.
This the 29th day of September, 2006.
 S/_____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________ PAMELA T. YOUNG COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER